# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| RICHARD KLONOSKI, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    Civil Docket No. 2:20-cv-____ |
| | ) |
| ROBERT WILKIE, in his official capacity | ) |
| as Secretary of the United States | ) |
| Department of Veterans Affairs, | ) |
| | ) |
| and | ) |
| | ) |
| RONNIE MARRACHE, | ) |
| | ) |
|    Defendants | ) |

## COMPLAINT AND DEMAND
## FOR JURY TRIAL

For his Complaint, the Plaintiff Richard Klonoski states as follows:

## PARTIES

1. The Plaintiff ("Dr. Klonoski") is a resident of the City of Auburn, County of Androscoggin, State of Maine.

2. Robert Wilkie is named as a Defendant in his official capacity as the Secretary of the United States Department of Veterans Affairs (hereinafter "the VA"), which was Dr. Klonoski's "employer," within the meaning of 29 U.S.C. § 2611(4)(A), from 2008 until 2019.

3. The Defendant Ronnie Marrache is the Chief of Medicine at the Veterans Affairs Hospital in Togus, Maine (hereinafter "VA Togus"), and functioned as Dr. Klonoski's "employer," within the meaning of 29 U.S.C. § 2611(4)(A), by acting "in the interests of" the VA in his dealings with Dr. Klonoski.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of the subject matter of the action pursuant to 29 U.S.C. §2617(a)(2) and 28 U.S.C. §1331.

5. Venue is properly laid in the District of Maine because the acts complained of occurred within the District.

6. The Plaintiff demands a trial by jury on his claim against Defendant Marrache.

## FACTS

7. From January 2008 until August 2019, Dr. Klonoski was employed by the VA as a physician in the VA Maine Healthcare System, at VA Togus.

8. In the course of his employment with the VA, Dr. Klonoski was an "eligible employee" within the meaning of the Family Medical Leave Act, 29 U.S.C. §2611(2), because, as a physician in the Veterans Health Administration of the VA, he was not – despite his federal employment – "covered under subchapter V of chapter 63 of title 5." See 5 U.S.C. §6301(2)(B) (for purposes of the law specifically governing Federal employee leave, the term "employee" does not include "a physician, dentist, or nurse in the Veterans Health Administration of the Department of Veterans Affairs").

9. Every year from 2008 through 2018, Dr. Klonoski was the subject of a "Proficiency Report" issued by his superiors at VA Togus, in which he was rated on a scale of "Unsatisfactory" to "Outstanding" in several dimensions, including "Clinical Competence," "Administrative Competence," and "Personal Qualities."

10. Every year from 2008 through 2016, Dr. Klonoski was rated "Outstanding" in the dimension of "Clinical Competence."

11. In 2015, Dr. Klonoski's elderly mother, who suffered from dementia – a "serious health condition" within the meaning of the Family Medical Leave Act, 29 U.S.C. §2611(11) – was assessed by her physician as being dependent in all instrumental activities of daily living, and in some activities of daily living. As such, she was homebound and required the equivalent of home health care, which was provided by Dr. Klonoski and a cousin.

12. In 2015, Dr. Klonoski periodically used sick leave to assist with the care of his mother.

13. In Dr. Klonoski's Proficiency Report for the period from October 1, 2014 to September 30, 2015, his immediate supervisor, the Chief of Cardiology, rated his overall performance as "High Satisfactory."

14. Defendant Marrache, in his capacity as Chief of the Medical Service, amended the ratings given by the Chief of Cardiology on Dr. Klonoski's 2014-2015 Proficiency Report, downgrading Dr. Klonoski's overall rating from "High Satisfactory" to "Satisfactory," and commenting: "He needs to adhere to the department leave

policy.  Requesting leave at the last minute creates large swaths of patients that need to be rescheduled and this is not good for overall patient care/satisfaction."

15. In 2016, Dr. Klonoski applied for and was approved for intermittent Family Medical Leave, to a maximum of two days per week, to enable him to care for his seriously ill, elderly mother.

16. In 2016, Dr. Klonoski used approximately 18 to 20 days of approved FMLA leave to participate in the care for his mother.

17. In Dr. Klonoski's Proficiency Report for the period from October 1, 2015 to September 30, 2016, the comment was made that Dr. Klonoski "needs to notify the Chief of Cardiology of all of his leave time."

18. In 2017, Dr. Klonoski was again approved for intermittent FMLA leave, to a maximum of two days per week.

19. In 2017, Dr. Klonoski used approximately 18 to 20 days of approved FMLA leave to participate in the care for his mother.

20. In Dr. Klonoski's Proficiency Report for the period from October 1, 2016 to September 30, 2017, the Chief of the Cardiology Service commented that Dr. Klonoski "expects office and other physicians to just adjust to his request for FMLA or AL with little notice or regard to the impact on his patients or other physicians that are often asked to cover for him."

21. Upon information and belief, at some point in 2017, Dr. Marrache sent to Dr. Stephen Sears, Chief of Staff at VA Maine, a letter falsely accusing Dr. Klonoski of

having engaged in a "trend of neglect, marginal care, and in several cases egregious and incompetent behavior."

22. Dr. Marrache's back-channel communication with Dr. Sears – which was unknown to Dr. Klonoski – was motivated in part by his dissatisfaction and frustration with Dr. Klonoski's exercise of the rights afforded by the Family Medical Leave Act.

23. In his Proficiency Report for the period from October 1, 2016 to September 30, 2017, Dr. Klonoski was rated "Satisfactory" in the dimension of Clinical Competence.

24. Although Dr. Marrache, unbeknownst to Dr. Klonoski, had falsely accused Dr. Klonoski (in his written communication with Dr. Sears) of incompetence, on November 15, 2017 he approved, without comment, the Proficiency Report which rated Dr. Klonoski's Clinical Competence as "Satisfactory."

25. Upon information and belief, at some point in or around 2017, Dr. Marrache documented one or more patient complaints involving Dr. Klonoski as being "valid," although at the time Dr. Marrache did not inform Dr. Klonoski of those complaints or give him a chance to respond.  The effect of this action was to adversely affect the amount of a Pay for Performance bonus Dr. Klonoski was to receive.

26. Dr. Marrache's action, described in the preceding paragraph, was the kind that would deter a reasonable person from exercising his FMLA rights, and thus amounted to an adverse employment action.

27. In 2017 Dr. Kathleen Harper assumed the role of Chief of Cardiology at VA Togus.

28. In 2018, due to the declining physical and mental health of his mother, Dr. Klonoski was approved for two days per week of non-intermittent FMLA leave.

29. In 2018 Dr. Klonoski used 42 days of approved FMLA leave to participate in the care of his mother.

30. Dr. Harper, acting in her role as Chief of Cardiology, frequently criticized Dr. Klonoski's use of approved FMLA leave, complaining that his exercise of the rights afforded by law placed too great a burden on the other cardiologists at VA Togus.

31. Dr. Harper, acting in her role as Chief of Cardiology, told Dr. Klonoski that he should provide a month or more of advance notice of his intention to use FMLA leave, and that his failure to do so inconvenienced her in her efforts to create a cardiology call schedule.

32. Dr. Marrache, acting in his role as Chief of the Medical Service, likewise frequently criticized Dr. Klonoski for his failure to give what Dr. Marrache regarded as sufficient advance notice of his intention to use FMLA leave, and in fact implied to Dr. Klonoski that he should give at least 45 days' notice – the notice which was required for use of vacation time, but not for FMLA leave.

33. In Dr. Klonoski's Proficiency Report for the period from October 1, 2017 to September 30, 2018, Dr. Harper commented that Dr. Klonoski had "continued issues with leave." She went on to say:

> While I understand that Dr. Klonoski has a FMLA [sic], I will continue to plead with him to try and give dates he needs well

        in advance. The use of leave at the last minute continues to be disruptive to clinic scheduling and patient satisfaction.

34. Dr. Harper's false characterization of Dr. Klonoski's exercise of his FMLA rights as "disruptive" was the kind of action that would deter a reasonable person from exercising his FMLA rights, and thus amounted to an adverse employment action.

35. In his Proficiency Report for the period from October 1, 2017 to September 30, 2018, Dr. Klonoski was rated "High Satisfactory" in the dimension of Clinical Competence.

36. Upon information and belief, at some point in 2018 or 2019, Dr. Marrache had Dr. Scott Kinlay, a cardiologist at the Boston VA hospital, review cases which Dr. Marrache believed reflected substandard care by Dr. Klonoski.

37. Upon information and belief, Dr. Kinlay found no deviations of the standard of care in the cases he reviewed at Dr. Marrache's request.

38. On May 24, 2019, Dr. Marrache sent a letter to Dr. Sears, in which he stated that he disagreed with Dr. Kinlay's opinions and summarized his own purported concerns about Dr. Klonoski's performance and behavior.

39. In his May 24, 2019 letter to Dr. Sears, Dr. Marrache characterized Dr. Klonoski's use of his 2018 FMLA leave as "disruptive"; and more specifically identified as "issues" of concern (1) Dr. Klonoski's alleged failure to "submit FMLA/SL as timely as possible," and (2) Dr. Klonoski's submission on April 2, 2018 of his request for FMLA leave for the months of April and May, requiring that the call schedules be "reworked."

40. In his May 24, 2019 letter to Dr. Sears, Dr. Marrache repeated the false allegation – first conveyed in his 2017 letter to Dr. Sears – that Dr. Klonoski had engaged in a "trend of neglect, marginal care, and in several cases egregious and incompetent behavior."

41. When Dr. Marrache repeated, in 2019, the false allegations of neglect and incompetence he had made in his 2017 letter to Dr. Sears, he was motivated in part by his continuing dissatisfaction and frustration with Dr. Klonoski's exercise of his FMLA rights.

42. The repetitive criticism of Dr. Klonoski's exercise of his FMLA rights, by Dr. Marrache and Dr. Harper, and Dr. Marrache's continued efforts to undermine Dr. Klonoski professionally, were the kinds of actions that would deter a reasonable person from exercising his FMLA rights, and thus amounted to an adverse employment action.

43. On June 10, 2019, as a direct result of Dr. Marrache's false and distorted allegations, the VA Hospital summarily suspended Dr. Klonoski's clinical privileges, pending a Focused Clinical Care Review.

44. Although the summary suspension was purportedly based solely upon clinical concerns, its approval by the Chief of Staff, Dr. Sears, was influenced by Defendant Marrache's criticisms of Dr. Klonoski's exercise of his FMLA rights.

45. The summary suspension was the kind of action that would deter a reasonable person from exercising his FMLA rights, and thus amounted to an adverse employment action.

46. While Dr. Klonoski served the summary suspension, the VA proceeded with the Focused Clinical Care Review.

47. The VA's policies require that the cases considered in a Focused Clinical Care Review be randomly selected, and not "'cherry picked' to include only cases of concern.

48. Dr. Marrache violated VA policy by directing that the cases selected for review cases include cases he had already determined to be concerning – but which he had not sent to peer review, opting instead to collect cases he planned to eventually use to injure Dr. Klonoski professionally – and by contacting at least one of the reviewers during the Focused Clinical Care Review process.

49. The variance from VA policy directed by Dr. Marrache undermined the objectivity and reliability of the Focused Clinical Care Review, and corrupted its results.

50. Dr. Marrache intended that his directive to deviate from the VA's own established policy would undermine the objectivity and reliability of the Focused Clinical Care Review, and corrupt its results.

51. Dr. Marrache's variance from VA policy, and his corruption of the Focused Clinical Care Review, was motivated in part by his intention to punish and retaliate against Dr. Klonoski for his exercise of FMLA leave rights.

52. Dr. Klonoski submitted a detailed reply, refuting the charges of failure to meet the standard of care that had been raised in the course of the Focused Clinical Care Review.

53. On July 2, 2019, the Professional Standards Board of the VA Maine Healthcare System was convened to review the results of the Focused Clinical Care Review and Dr. Klonoski's response.

54. The Professional Standards Board recommended the revocation of Dr. Klonoski's clinical privileges and his removal from federal service.

55. The recommendation of the Professional Standards Board was influenced by Dr. Marrache, and by the outcome of the Focused Clinical Care Review, which Dr. Marrache had deliberately corrupted.

56. The recommendation of the Professional Standards Board was subsequently approved by the Chair, Clinical Executive Board, and the Center Director.

57. The recommendation of the Professional Standards Board and its subsequent approval were the kinds of actions that would deter a reasonable person from exercising his FMLA rights, and thus amounted to additional adverse employment actions.

58. On July 12, 2019, the Chief of Staff at VA Maine notified Dr. Klonoski of the recommendation and its approval, and his right to reply and review evidence before a final decision was made by the Center Director.

59. Dr. Klonoski again responded to the charges against him, both in writing and in a personal meeting with the Center Director.

60. The Center Director, who had no medical background or training, was not equipped to make an informed assessment of the facts, independent of the results of the Focused Clinical Care Review which had been corrupted by Dr. Marrache.

61. By letter dated August 6, 2019, Dr. Klonoski was informed that the Center Director regarded the penalty that had been imposed to be appropriate and within the range of reasonableness.

62. The final decision of the Center Director was the kind of action that would deter a reasonable person from exercising his FMLA rights, and thus constituted yet another adverse employment action.

63. By all of the foregoing actions, the Defendants violated 29 U.S.C. 2615(a)(2), which prohibits employers from retaliating against employees for exercising their rights to FMLA leave.  29 C.F.R. §825.220(c).

64. As a result of the Defendants' violations of the FMLA, Dr. Klonoski has lost salary and employment benefits, and his reputation has been harmed.

65.  In Dr. Marrache's capacity as the Chief of the Togus VA Medical Service he supervised the conditions of Dr. Klonoski's employment, and he personally participated in the violation of Dr. Klonoski's FMLA rights by, among other things: downgrading the rating in Dr. Klonoski's 2014-2015 Proficiency Report; falsely accusing Dr. Klonoski of "neglect, marginal care, and . . .  egregious and incompetent behavior"; taking action which adversely affected the amount of a Pay for Performance bonus Dr. Klonoski otherwise would have received; repeatedly criticizing Dr. Klonoski's use of FMLA leave, and characterizing it as "disruptive"; surreptitiously collecting evidence in a misguided effort to discredit Dr. Klonoski; influencing the decision to summarily suspend Dr. Klonoski's clinical privileges; and corrupting the Focused Clinical Care Review.

WHEREFORE, the Plaintiff requests the following relief:

    a. A judgment declaring that the termination of his clinical privileges was not justified, and that the reasons given for the termination were pretextual;

    b. Reinstatement in his position;

    c. An award of the salary and employment benefits he has lost as a result of the Defendants' conduct;

    d. Interest on the amount of the salary and employment benefits he has lost as a result of the Defendants' conduct, calculated at the prevailing rate;

    e. An additional amount as liquidated damages equal to the sum of his damages and the interest thereon; and

    f. A reasonable attorney's fee, reasonable expert witness fees, and other costs of the action.

Dated at Portland, Maine this 27th day of February, 2020

                                        NORMAN, HANSON & DETROY, LLC

                                        /s/ Christopher C. Taintor, Esq.
                                        Attorney for Plaintiff Richard Klonoski

Norman, Hanson & DeTroy, LLC
Two Canal Plaza
P.O. Box 4600
Portland, ME  04112-4600
(207) 774-7000
ctaintor@nhdlaw.com